Filed 2/26/16  Martinez v. A.R. Private Club CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| TERESA MARTINEZ, | B261716 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC499593) |
| v. | |
| A.R. PRIVATE CLUB, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Barbara A. Meiers, Judge.  Reversed.

Fink & Steinberg, Keith A. Fink and Sarah E. Hernandez for Plaintiff and Appellant.

Law Offices of Sheldon Rosenfield and Sheldon Rosenfield for Defendant and Respondent.

\* \* \* \* \* \* \* \* \* \*

Plaintiff Teresa Martinez sued defendant A.R. Private Club alleging causes of action for wrongful termination, for violation of various Labor Code and Business and Professions Code sections, and for intentional infliction of emotional distress, based on the theory that plaintiff was defendant's employee, and that defendant failed to pay wages or overtime compensation and failed to provide meal or rest periods, and wrongfully terminated plaintiff after she complained about these conditions. The complaint alleged that plaintiff worked as a hostess and server for defendant, which operated a private card club. She was compensated only with tips, was required to launder defendant's tablecloths at her own expense, and was never reimbursed for the food and beverages she purchased and served to defendant's customers.

The trial court disposed of all of plaintiff's claims by summary judgment, concluding that plaintiff was not an employee and instead she was an independent contractor providing a "mini catering service" to defendant. Plaintiff appeals, contending there are triable issues of fact as to her employment status. We agree, and reverse and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

These are the material facts, both disputed and undisputed. We do not include any facts to which objections were sustained by the court. No party claims any error in the trial court's evidentiary rulings.

Defendant is a sole proprietorship owned by Mr. Reza Sharifzadeh. Defendant is a private card club located in Beverly Hills that maintains facilities for seniors to play card games. Defendant rents tables to its "customers," who organize the games to be played at the tables they rent. Defendant receives $15 per player, no matter what the customers charge the card players. The club provides free tea and coffee to its customers. The club does not sell soda, food, or snacks, but players are free to bring their own food or to order food for delivery from nearby restaurants.

Over the years, people like plaintiff have come to the club and provided snacks and drinks to the card players. Defendant receives no share of the income made by

2

plaintiff and others like her for the services they provided to the players. Defendant did not maintain time records for plaintiff or others like her, and paid them no wages.

Plaintiff began working at the club in 2001, and worked there for 11 years. Plaintiff maintained no records of the time she worked at the club. On many different occasions, plaintiff asked defendant for wages and was refused. She continued to work without being paid wages because she needed the money from the tips she received.

In support of its summary judgment motion, defendant argued that none of plaintiff's claims had merit because plaintiff was an independent contractor and not an employee, and therefore to the extent that all of her claims relied on the existence of an employment relationship, they failed.

Defendant introduced evidence that its customers are responsible for setting up the tables for games, and for cleaning up the tables after the games have concluded. The club's customers could bring in "vendors" like plaintiff to serve cookies and tea. These vendors were not employees of the club. The vendors brought drinks and prepared food to give or sell to the players, and kept all of the money and tips they received from the players. The club exercised no control over what kind of food or drinks could be served, how the food was prepared, or what was charged for the food. The club had no control over how the vendors served the card players, and exercised no control over the days or hours the vendors came to the club. Vendors had complete discretion over their schedules. The vendors were not required to clean or perform any services for the club.

Contrary to the allegations in the complaint, Mr. Sharifzadeh's wife, Simin Sharifzadeh, was never involved in the operation or management of the club, had no duties pertaining to the club, and "seldom came to the club." Mrs. Sharifzadeh never asked plaintiff to do any cleaning or other work at the club. Moreover, there were no tablecloths at the club to be washed.

Mousah Khoramian had organized card parties at the club for a decade. (Mr. Khoramian's involvement with the club is disputed. In his declaration in support of defendant's motion, Mr. Khoramian averred that he has "no ownership or other interest in [defendant] and [is] not related to Mr. or Mrs. Sharifradeh [*sic*]. I know them only as a

3

card player for many years at [defendant club]." But Mr. Sharifzadeh testified in his deposition that Mr. Khoramian had run his business for the last five months.) Mr. Khoramian declared that throwing a card party involves getting together a group of players and renting a table from defendant. Mr. Khoramian paid defendant a fee for each table based on the number of players in his games. Mr. Khoramian often called plaintiff and asked her to serve the players at his card parties. If she was unavailable, he would ask someone else. Defendant never told Mr. Khoramian to ask plaintiff to attend a card party.

Plaintiff served the players at a card party by getting them tea or coffee from the club's kitchen, or snacks that she had chosen to prepare. She was paid by the card players with tips, and this was her only compensation for the services she provided. Plaintiff never told Mr. Khoramian that she expected compensation from the club, and he believed her only connection to the club was as a server at the request of players like him who organized games. Mrs. "Sharifradeh" never told Mr. Khoramian that plaintiff was required to do any cleaning or wash any tablecloths. Mr. Khoramian never saw Mrs. "Sharifradeh" yell at or abuse plaintiff "during all the many occasions and hours I have observed them together at the Club."

In opposition to defendant's motion, plaintiff offered Mr. Sharifzadeh's deposition testimony that either he, his wife, his son or his daughter went to the club to open it for the players and collect their money. Mr. Sharifzadeh testified that every day the club was open, there was someone there, like plaintiff, serving cookies for tips. According to Mr. Sharifzadeh, card games started at 8:00 p.m. and went until 1:30 a.m., but the servers arrived at the club between 5:00 p.m. and 7:00 p.m. The servers were "required" to stay and serve cookies until the club closed.

Plaintiff testified in her declaration that she reported to both Mr. and Mrs. Sharifzadeh, as well as Mr. Khoramian. Mrs. Sharifzadeh told plaintiff that she was the boss, and that Mr. Khoramian worked for her. Plaintiff's duties included cleaning the card tables, vacuuming the club, preparing snacks in the club's kitchen, and preparing and serving tea and coffee. She was also required to launder the club's tablecloths at her

4

own expense. Plaintiff believed she worked for the club. Mrs. Sharifzadeh often gave plaintiff "orders" and instructed her to clean. Plaintiff had a set work schedule over the 11 years she worked there; at various times she worked either two or three days a week. She was scolded if she arrived late, and was not permitted to call in sick. If she was scheduled to work, she was told to come in, even if she had a fever. She was also not permitted to take breaks.

Plaintiff never sold any food or beverages to the players; she received only tips for the items she served. Plaintiff did not decide what food to bring to the club. Mrs. Sharifzadeh "scolded [her] in front of all the people" when she did not bring fruit to serve. She told plaintiff she would "fire" her when she cried after being scolded. Mrs. Sharifzadeh also took plaintiff to a local grocery store and told plaintiff to shop exclusively at that store going forward, and "pointed out to [plaintiff] all the food items [she] was to buy for the customers."

Plaintiff continued working after her requests for wages were refused because she needed the tip money and could not find another job.

Irma Vargas submitted a declaration in support of plaintiff's opposition, averring that she worked at defendant's club in 2007, and that her work there was directed by both Mr. and Mrs. Sharifzadeh. Her duties included making and serving tea, cleaning tables, placing tablecloths on the game tables, washing dishes, taking out the trash, vacuuming the premises, and cleaning the kitchen. She also was instructed to provide customers with cookies and fruit at her own expense, and was scolded by Mrs. Sharifzadeh if the fruit was not cut correctly, or the tables were dirty. Ms. Vargas was only compensated with tips. She asked Mrs. Sharifzadeh for wages but was refused.

The trial court granted defendant's motion for summary judgment, concluding that plaintiff was an independent contractor providing a "mini catering service" and was not an employee. This timely appeal followed.

## DISCUSSION

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of

5

law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.)

Where summary judgment has been granted, we review the trial court's ruling de novo. (*Aguilar*, *supra*, 25 Cal.4th at p. 860.) We consider all the evidence presented by the parties in connection with the motion (except that which was properly excluded) and all the uncontradicted inferences that the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

## 1. Triable Issues of Fact Exist as to Plaintiff's Employment Status

"The principal test of an employment relationship. . . is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. [Citations.] In addition, several secondary criteria are used to determine the nature of a service relationship. Such secondary criteria include, among others: (1) whether or not the worker is engaged in a distinct occupation or an independently established business; (2) whether the worker or the principal supplies the tools or instrumentalities used in the work, other than tools and instrumentalities customarily supplied by employees; (3) the method of payment, whether by time or by the job; (4) whether the work is part of the regular business of the principal; (5) whether the worker has a substantial investment in the business other than personal services; (6) whether the worker hires employees to assist him. [Citations.]" (*Torres v. Reardon* (1992) 3 Cal.App.4th 831, 837; see also *Arzate v. Bridge Terminal Transport, Inc.* (2011) 192 Cal.App.4th 419, 426.)

"The existence and degree of each factor of the . . . test for employment is a question of fact, while the legal conclusion to be drawn from those facts is a question of law. [Citation.] Even if one or two of the individual factors might suggest an

6

employment relationship, summary judgment is nevertheless proper when . . . all the factors weighed and considered as a whole establish that [plaintiff] was an independent contractor and not an employee." (*Arnold v. Mutual of Omaha Ins. Co.* (2011) 202 Cal.App.4th 580, 590; see also *Millsap v. Federal Express Corp.* (1991) 227 Cal.App.3d 425, 431 [" 'Whether a person is an employee or an independent contractor is ordinarily a question of fact but if from all the facts only one inference may be drawn it is a question of law.' "].)

With its motion for summary judgment, defendant sought to establish that it exercised no control over plaintiff, required no services of her, and merely allowed her to render services at the behest of its customers at its facility. Plaintiff's opposition evidence showed that plaintiff had an established work schedule which required her to be at defendant's facility before the arrival of its customers, to serve food and drinks until the club closed, was scolded if she was late and discouraged from calling in sick, was directed by the principal's wife to serve particular foods, was required to clean defendant's premises, used defendant's facilities to prepare and serve tea and coffee purchased and provided by defendant, and that she repeatedly asked for wages and believed she was an employee.

Defendant denies that it required plaintiff's services and contends that its customers were the ones contracting for plaintiff's services. There was no evidence that plaintiff was in the business of providing catering or cleaning services other than her work for defendant; in fact, she charged nothing for the food and services provided, received only tips, and continued to work for defendant because she could find no other source of income. On this record, we are not persuaded that the only inference from the evidence is that plaintiff was an independent contractor. Accordingly, we reverse the judgment below.

7

**DISPOSITION**

The judgment is reversed.  Appellant is to recover her costs on appeal.


GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.


FLIER, J.